May I please the court? My name is Arman Mukarian. I represent the petitioner. I would like to reserve five minutes for rebuttal. This case involves a family of three individuals, a father, a mother, and a son, who applied for asylum. And there were three issues at the petitioner level, at the appeals level. One of them was credibility, and the sub-issue of that was, well, the credibility was based on alleged inconsistencies and fraudulent documents. And the other issue was the motion to reopen. Can I ask you about the second issue first? And I want to ask you a narrow question about the motion to reopen. The motion to reopen does not affect the son, does it? In other words, the claim is that there was ineffective assistance of counsel here because the ‑‑ because counsel failed to preserve the eligibility of the husband and the wife to apply for a visa. But the son was ineligible for that visa, was he not? That's right. He was above 21 years old. So to the ‑‑ and I understand that the adverse ‑‑ the other parts of the case affect the son. But this part of the case does not. So if we were to give relief solely on the basis of the motion to reopen, we would still not ‑‑ we would still not give relief to the son. Correct? That's right. Okay. Although the son's name is Vartan, I believe, for the disclosure, there is a related case on the docket we do not represent. Well, and some other panel or other part of the court will deal with that related case. That's right. Okay. I didn't want to take you off track, but the briefs weren't clear on this, and the government had responded to it, and I wanted to make sure that I understood. The son doesn't have any stake in the motion to reopen if we don't grant relief with respect to the adverse credibility finding. That's correct, Your Honor. And of these three issues, probably the motion to reopen is the simplest. So I would like to touch on that first. Basically, what former counsel did, he failed to advise that they could not apply for adjustment if the IJ denied. And I guess the former counsel wrote a letter where he disputed the conversation, but he admitted that he basically did not know the law. The law is clear that he could not. So what should we do? If you're right, let's assume that there's a fact question about whether he provided an effective assistance. Yes. Because he says, among other things, well, they told me what they really wanted to do was get asylum and not apply for a visa. What should we do? You're here this morning. You're writing the last line of the disposition. What do you want us to do? Well, overall, we don't. On this issue. On this issue, on reopening. On this issue, on reopening. To remand for adjustment. To do what? To remand for adjustment, to remand to allow the parents. There would be a hearing, presumably, and the immigration judge would hear from your clients, but also hear from the lawyer, and the immigration judge would decide whether those letters from the lawyer and any testimony the lawyer might give lead to a different conclusion. In other words, wouldn't there have to be some sort of a hearing and there would still be credibility findings? Your clients don't automatically get the family visa because of the ineffective assistance of counsel until after somebody other than us has an evidentiary hearing. Well, you are, because from the letter of the counsel, it is clear that he did not know the law and he was. Wouldn't that have to have caused some prejudice to your clients? What he also says is, I discussed this whole issue with them early on, and they said, no, no, what we want is asylum, because we want to keep our son here, which is why I asked the question, and he can't stay except if we get asylum. That's what he says. He may be lying. He may not be lying. Your clients, but don't we have to have a finder of fact, look at all that and decide? Isn't the problem, so let's assume we, in criminal cases, and I think the same is true here, there are two steps. One, did the lawyer give bad advice, wrong advice? Therefore, that lawyer was ineffective. Second step is, what was the prejudice? And on that, we may need to have somebody make a credibility finding. So let's assume we say, A, that this lawyer gave wrong advice, therefore was ineffective. B, in effect, the BIA, it seems to me, may have engaged itself in credibility findings with respect to disputed evidence, which was not the role of the BIA, but it's the role of the IJ. So you don't automatically get the family visa. You get a hearing, right? I agree that the BIA should not have engaged in credibility, evidentiary hearing. But under the case law of this circuit, if it's established that the lawyer gave wrong advice, and we believe the letters establish, the prejudice, the law on prejudice is that as long as the outcome may have been. Right. And the question is whether the outcome may have been different. And if the lawyer says, and his declaration is consistent with this, I discussed this issue. He gave them bad advice about what would happen if they went through with the hearing. But I discussed this issue with them early on, and they told me they weren't interested in pursuing that route because it would not allow the son to stay. And therefore, so it may be that they weren't prejudiced. We don't know. And we don't know what a finder of fact would find, but we can't. If the BIA made a mistake in engaging in fact-finding, we would, too, wouldn't we? I believe, assuming it's true that the lawyer gave, that they refused, that the lawyer told them, you should seek adjustment. And they said no. There still is prejudice because had they known the law, had the clients known the law, they would have chosen a different path. How do we know that? I'm sorry? How do we know that if they had known the law, they would have chosen that route? We don't know. But under the case law, it may have affected the other. Well, don't they at least have the obligation of establishing, as a matter of fact, that had we known the law, we would have taken that route? What if they take the stand and say, the lawyer told us that, but we rejected it out of hand because we knew our son couldn't stay? Would they then be entitled to relief? Well, they didn't say in their sworn affidavits. The clients, they didn't say that we. Well, we don't. But the problem is we haven't had an evidentiary hearing. They haven't been subjected to cross-examination. So, I mean, I guess I must say, from my perspective, it seems to me if you're entitled to relief on this ground, it's relief that gets you a hearing on ineffective assistance. But let me ask you a different question about this claim. What should the lawyer have done? What would have been effective assistance in this case? The lawyer should have told them that if the I.J. denies the asylum, you cannot apply for adjustment. Okay. Let's assume he had told them that and they said, you're right, lawyer, we don't want to be in that box. What should he have done with the pending removal proceedings? The clients could have applied for adjustment, the parents and the son would have applied for adjustment. Well, I understand, but there was a pending removal proceeding, correct? That's right. It was going on. Got a priority date at some point along the way. Just work out for me what a good lawyer would have done in the context of that proceeding. I know a good lawyer would have told them that if you – if there's a removal, you're done. So you don't want to go through a proceeding and lose. But what would the good lawyer have done in this case? Tell me, from your perspective, what was the appropriate procedural thing for the lawyer to do once there was already a pending removal proceeding and a hearing date set? The lawyer should have told the judge – the judge that there was a new relief available and requested – the lawyer should have requested the judge to perhaps allow the clients to file applications. Okay. Good. We're on the same wavelength here then. Was the – would that be a discretionary decision by the judge? Could the judge have said, no, you pursue that route, we're going to go ahead and finish this hearing? Or was the judge – would the judge have been required – I just – help me out on here. If the judge refused to continue the hearing or would – and had gone ahead and found against your clients and ordered removal. The judge would have to give good reasons. Any relief is discretionary. Even adjustment is discretionary. But the judge would have to give cogent reasons and – to base the decision upon. Well, if the lawyer had said to them, here's – if you don't do – if you don't raise this now, you're out of luck because the judge is about to issue his or her decision. So you raise it with the immigration judge. Does the immigration judge say, okay, now you've raised the family – the adjustment of status based on family-based immigrant visa. I'll nevertheless go ahead and rule on asylum. I deny asylum, but you can proceed on the other track? Or does the judge say, well, now that you're proceeding on that track, that moots out the asylum question? Or I'll hold it in abeyance? I mean, can you ride two horses at once? Can the judge deny with one hand and let you proceed with the other hand once the judge is aware of both possibilities? I'm not sure on that. Isn't it the order of removal that makes your clients ineligible for the visa? That's right. I mean, so once the judge issues the order of removal, at least I want to ask the government this, too, because I understand the law, that's the end of the gate with respect to the readjustment of status. The clients can apply for a motion to reopen afterwards, but they have to show that they tried to pursue the relief if it was available. So even if there is a removal order, they can seek – So your answer to Judge Friedman's question is that if they had told the judge they were trying to pursue this relief, even if the judge then issued a later removal order, that wouldn't make them ineligible for readjustment? That's correct. Okay. Can you – I don't know if you want to spend any time on the adverse credibility finding or save your – you wanted to have five minutes for rebuttal. How many minutes do I have? It's right in front of you. You have three minutes and 40 seconds. Okay. Well, just to quickly go over the credibility, basically the inconsistencies, there was – the only contradictory inconsistency, indirect inconsistency, was between the original declaration and the – the original testimony. The only contradictory inconsistency was between the original declaration, which was completed by somebody else who apparently was not even fluent in English, and it was as to whether a mob is a mafia or a mafia is a mob. So it was really not even an inconsistency. Whether – what's – I didn't understand what you just said. The judge said that the original declaration stated that he was persecuted by the mobs and the mafia, and later he testified that it was the government. And we – I think it makes it clear that in the original declaration, the two terms are used interchangeably. But didn't – there was another problem here, which is the fraudulent documents that your client submitted. That's right. And he tried to withdraw them, but the judge said, whether or not you're going to withdraw them, I don't think you've distanced yourself from them. I don't know that you weren't complicit in their preparation, and I don't – you haven't convinced me that you weren't. Why isn't that enough for the adverse credibility finding? Because you are under the case law, particularly Yemain Barber v. Ashcroft, if there is no evidence that the client was aware. But I guess my question is, having submitted the documents, do we draw an inference that the client was aware that he's supposed to rebut, or must the government prove that he's aware? Under Yemain, the government should show that there is – How does the government do that? You submit fraudulent documents, and the government has to show you're aware. You ask the guy on the stand whether he's aware, he says no. So doesn't that mean you can always submit fraudulent documents? Are you supposed to call the preparer of the fraudulent documents and demonstrate that they work together? No, not necessarily, Your Honor. But in this case, the client testified that he didn't know that he'd be dumped. Yeah, but the judge didn't believe him. That was my – the I.J. says, I don't believe you. I think you were complicit in this. He sought to withdraw these documents well before the forensic report came back showing they were fraudulent, right? Exactly. The purpose of the statute is to prevent fraud on the court. And if somebody withdraws documents, he's no longer, if he ever was to begin with, perpetrating a fraud on the court. That's correct. And that, I think, indicates that he was trying to correct the mistake once he discovered it, to correct the fraud once he discovered it. Yeah, but the court's still entitled to say that your application, based on these fraudulent documents, is inconsistent with your testimony, right? Whether or not the documents were withdrawn, the court can surely say the kind of stuff that's in your application here, based on these documents, just isn't true. I think such a holding would invalidate the precedent, Umane v. Ashcroft. Basically, there is no – if there is no evidence that he knew and if he says that I didn't know and there is indication that he didn't know, then the I.J. cannot make that kind of decision. We've used up almost all your time, so why don't you say – we'll give you a little bit extra. Thank you, Your Honor. Good morning. May it please the Court. Kelly Walls for the Attorney General. If I may, I'd like to first just clarify the process of moving to remand before the board, based on the ineffective assistance of counsel. Because Mr. Balyan appealed the immigration judge's decision to the board, any jurisdiction over future motions, whether they be motions to remand or motions to reopen, vested with the board? Sure. Okay. At that point, when the board receives the motion, it's no longer restricted by the limitations on fact-finding for its appellate review of immigration judge decisions, but instead adjudicates the motions as the first trier of facts. I understand that. I understand that. But how can it adjudicate a motion when it's got conflicting declarations? Well, and that's the point, is that to make – I would say I've been doing this for 10 years. I have never seen an evidentiary hearing on an ineffective assistance of counsel claim. It doesn't happen. It's adjudicated on the evidence before the board. So the – Mr. Balyan had the burden of proof. Well, in your 10 years' experience, how does the board decide whether there's prejudice? Let's assume for the moment that there was ineffective assistance of their advice. Sure. Okay. Just assuming for the sake of argument that former counsel was ineffective, the prejudice in this case I think would be fairly clear because they would have been deprived the ability to apply for adjustment. But the real question is, was there ineffective assistance? Well, but here's my point. So let me walk through this. Sure. Because you've done this for 10 years and I've only done it for two, and not as consistently as you have. What we have here is a declaration from the former lawyer who says, well, they're right. I told them they could still apply for adjustment after removal and I was wrong. But I'm – I also – they also told me that they were mostly interested or primarily interested in asylum because that's the only way they could get relief for the son. So that's what we have on the one hand. Sure. We have on the other hand is a declaration from the – From the Balyan. Balyan, who says, had I known, I would have done something different. Sure. And neither of them appear in front of the BIA so the BIA can make a credibility determination. I don't understand how the BIA can find facts under those circumstances with two conflicting affidavits. I think it's – Or declarations. Sure. It's not unlike any weighing of the evidence. But I think in this case the reason that the board credited opposing – or I'm sorry, former counsel's version of events is because the facts, if you put aside the just who said what, Mr. Balyan's son was not going to be able to get relief at that point. He did not have anything that would have probably sustained an asylum application on his own at that time. So what he was looking at is if they had gone forward, if – typically, and this is just a matter of practice, if an alien appears before the immigration judge and is eligible or wants to apply for adjustment and asylum, the immigration judge will typically do the adjustment case first for the simple fact that it's less time-consuming. There's – it's fairly simple. Sure. So that's why, even though there's discretion, this is a case in which they probably were prejudiced. Exactly. So if they proceeded on the adjustment application and Mr. and Mrs. Balyan received adjustment, their son was going to be left out in the cold. He did not have – he could have applied for asylum in his own right, but they're And so we have the one attempted kidnapping on himself. There wasn't really a case. No, we understand that the son couldn't. And we understand that a trier of fact – I understand that it's – and the other two people understand a lot more than me – that a trier of fact could conclude, having heard all of that, that I don't believe that you would have not gone through with the asylum application. My difficulty is Mr. Balyan says, I think in his declaration, had I known all that, I would have applied for adjustment first. And damn the son. He doesn't quite say that, but I'm going to let the son have to hang out to dry. And the BIA says, well, I'm looking at the two declarations, and we believe the lawyer and not Mr. Balyan. And I don't – Or another way to look at it is Mr. Balyan didn't meet his burden of proof for the motion to remand. He's got – if you have the two declarations, one from Mr. Balyan and one from former counsel, it's kind of a wash at that point. There was nothing else to substantiate his claim. And actually, if you look at former counsel's statement, he actually doesn't just say, you know, I told them they should go forward on adjustment and after the fact they could move to reopen. What he says is, I encouraged them to apply for adjustment of status. They didn't want to. They were adamant they wanted to go forward with adjustment as a fallback. And then when asylum was denied, he says, okay, now this is where we are. Come to my office, you know, next week and we'll talk about motions. Now, I'm assuming, and I think you have to assume in this record, that he gave them bad advice, which is the question is whether or not they were prejudiced by that advice, whether or not they would have followed the advice that were given. And don't we – am I wrong in saying Mr. Balyan says, had I been told at the beginning of the process that if I lost my removal – lost my asylum claim and withholding of CAT claims, and I wouldn't have gone forward with the process because then my wife and I wouldn't be able to stay here. And, you know, it's not the world's strongest asylum claim, so I think a lawyer might have said to him, you know, you're going to have to make a decision here. We can roll the dice on the asylum claim. We may not win it. Or you can keep you and your wife here. What do you want to do? And he says, basically – I mean, I know the affidavit was probably drawn up by Had I – had the lawyer done that, which is what he should have done to me, I would have – I wouldn't have gone forward. And the BIA says, we don't believe you. And I don't understand how they cannot believe him because they're just looking at affidavits. I think what they said is they chose to credit the attorney's version because it made sense in the factual circumstances. And in order for the Court to reverse this decision, you'd have to find that that decision by the board was irrational or arbitrary or contrary to law, and there is no way that the board cannot credit one affidavit over the other when they're balancing the two and trying to figure out which one makes the most sense in the factual circumstances. That's what the trier of fact is there for. So your position is this is not a summary judgment proceeding in front of the board? No. When a motion is filed before the board at that point, it's governed by the motion to reopen standard, but because there hasn't been an order of removal, it's considered a motion to remand. But it must still meet the motion to reopen standards. That's just how I would put it. And that the board is entitled to make credibility determinations on the papers? In this case, I would say I don't know that it's necessarily couched in terms of credibility so much as they found that given the two discrepant accounts, that they found Mr. Ballion didn't meet his burden of proof and that reopening wasn't warranted because ineffective assistance wasn't shown on the documents that he presented. Did the board? I'm sorry. I was just going to clarify. Part of this is the matter of Lizada requirements, that they have to present an affidavit from themselves, the agreement with the counsel, that they contacted counsel, that counsel, if they've provided a response, what that response was. So really the board in this case actually checked all the boxes they were supposed to for ineffective assistance of counsel cases. I know you're probably quite familiar with them. There's no contest here that Lizada was complied with. No. Lizada was complied with. And following all the Lizada requirements, having all that evidence, that's how the judge – I'm sorry, how the board evaluated the ineffective assistance of counsel claims. So I know in a lot of cases you don't actually get a response from counsel, but this is one where Lizada was completely complied with. And the purpose of that is to evaluate whether this is an attorney – I'm sorry, a petitioner making false claims of ineffective assistance of counsel. And here you've got two discrepant accounts, and that's the board's purpose. Let me ask a different question, because I'm not sure this is what the board was doing. There's no claim that Mr. Balian got ineffective assistance of counsel in the removal proceedings itself. In other words, there's no claim that the lawyer failed to do something in those cases. So what is the bad result? Well, removal proceedings is the whole process. It's the finding of removability and the application for removal. Right. But I want to focus – that's what I want to ask. Is the board's determination about ineffective assistance limited to whether or not Mr. Balian received ineffective assistance in the proceedings and in the application process? Or is the board able to look at whether or not had he gotten different advice earlier on, he would have taken a different route? Okay. I think the allegation of ineffective assistance of counsel was you – was former counsel should have advised him both that he was eligible and should apply for adjustment, because otherwise he may – he may lose that opportunity, and that he should have brought it up in the immigration court. No, I – yeah, I understand that's the allegation. I'm just – listen to my question. My question's different. My question is, for example, if we were hearing an ineffective assistance of counsel thing, we would focus on whether or not that led to a bad result in the trial below. We might not – we might not say, well, you should have taken a different route. And so my question is, could they have granted Mr. Balian relief even if his lawyer gave him effective assistance of counsel during the removal proceeding? If they believed him, could the board have given him relief and vacated the removal  I think maybe we're understanding removal proceedings in different ways. Yeah, but I'm asking a very specific question. No, no, no. And I'm – I think that what you're asking is, did he receive effective assistance during the asylum – the concession to removability and the asylum application process? Yeah. I'm asking you to assume that. And my question is a very narrow one. Could – can the – is the board – could the board, if it were convinced that he got perfectly good advice during the proceedings in front of the IJ in the application process, but that somebody should have told them to stop, can the board vacate the order of removal and say, okay, we're going to put you back to status quo ante? Well, status quo would have just been remanding back to the immigration court. Yes. Can they – does the board have the power to do that? If they found that former counsel was ineffective and failing to raise the adjustment issue to the IJ. Yes.  Okay. So he goes back before the IJ and – And then gets a chance to apply to adjust status. Okay. So – so – There's not going to be a hearing on the evidence. The board is going to make a ruling on the evidence as far as the ineffective assistance, whether they find it and prejudice or they don't. But if they do, it goes back to the IJ, but just for the issue of adjustment of status. And so the board had the power to give Mr. Valle the relief he sought. Yes. That's all I was asking. Okay. And they chose not to. And to reverse that, you'd have to find that that decision was arbitrary or capricious. I want to move to this. Sure. Because I have a question about what – the adverse credibility. Yes. And assume for the moment that this notion of the mafia versus the government is – you're going to lose on that. Okay. Assume that for a moment. Okay. But as I understand the law is if there's even one credibility determination that goes to the heart of the matter. Yes. That you win even if you raise six of them and you lose on the other five. Yes, that is correct. So what are your strongest – what's your strongest one or two, assuming that I disagree on the mafia versus government thing? Okay. That's a little difficult just because it sort of is pervasive throughout. So forgive me if some of it mentions that, but I'll focus on the incidents, the specific incidents that I think are the strongest. First, if you look at the 1997 abduction, in his initial statement he claimed simply that he was beaten because he stopped paying the extortion payments. Then he was released, whether these be mob members or police officers, and he immediately reported the abduction to the police. That's his initial statement at page 1085 of the record. He then changes that statement, his description of that 1997 abduction, to say that he was summoned to the police office – I'm sorry, the police station, where he – then he was abducted en route to the station. He was threatened with death if he continued to support the New Directions Party. When they released him, he was thrown from a moving vehicle, at which time a passerby called the highway patrol, who then summoned an ambulance. He was hospitalized for 10 days, and he received medical treatment for one month. All of what you've just described in that long sentence was new. That was all new. That apparently was the same incident that he described simply as being held, beaten, and then released and immediately reporting it to the police. Those were not in his original application. No, it was not. And that second description is at page 942 of the record. In the August 1999 extortion, he initially said that mob members demanded money. He was told to stop supporting unnamed political parties, and he was threatened with having his remains fed to wild animals. That's page 1086. However, later he simply reduced that to four national security officers demanded that he stop supporting the New Directions Party. What's, I think, important in this is he finds a specific political party that he was involved with that was completely absent from the first declaration. He didn't talk about opposition party or parties. He did, but what really changed from the first one to the second one is the addition of a governmental actor and a specific political party, I think, because the asylum officer denied it for failure to have a nexus to a protected ground, in this case a political opinion. So he realized that he needed to increase the appearance of political affiliation, and that's why all of a sudden there's this New Directions Party that he's contributing to. I know you're near the end of your time, but I'm still stuck on this motion to reopen. As I read our case law, our case law says BIA doesn't make credibility determinations on motions to reopen. It has to assume that the facts in an affidavit are true, and if they are true, would they give rise to relief. Do we agree? Exactly. Okay. I think there are two affidavits, though, that we have to credit, by the way. Okay. Okay. So assuming facts presented in an affidavit to support are assumed is true, correct? That's what the case law says, but I don't think it would be impugning the credibility of former counsel. That's what the case law says. Let me just see if I can walk through this. The case law says we treat the facts in an affidavit supporting a motion to reopen as true. Sure. Mr. Balian says, had I been told what I should have been told, I never would have proceeded with the proceeding. We treat that as true. If that is true, why isn't he entitled to reopen? Okay. I think, first of all, I would respectfully disagree that this is a credibility finding if you look at the facts. No, I'm saying it's not. I'm saying that what I'm looking at Joe versus Holder, but a bunch of cases say this. Sure. Facts in the affidavit supporting a motion to reopen must be accepted as true unless inherently unbelievable. I agree. But if you look at page 4 of the Board's record, second full paragraph, what the Board actually says is, although Respondent alleges, and at this point Respondent was Mr. Balian, alleges in his motion that Mr. Pybe, or former counsel's last name, I'm sorry, committed ineffective assistance of counsel by ignoring his request to pursue adjustment of status. We observe that Mr. Pybe has provided a contrary version of events, and then they describe what it alleged. In the circumstances, the motion does not establish that reopening is appropriate under matter of lazada. So what they did is they did the balancing. I mean, it's not necessarily a credibility determination, but I think it really comes down to a burden of proof that there isn't evidence of ineffective assistance of counsel which warrants reopening in this or remand in this case, not unlike any factual balancing that a prior fact is due. So your position is that taken on its face, Mr. Balian's affidavit would not support reopening? No. I mean, if we credit Mr. Balian's affidavit and we credit opposing counsel's it's not clear what happened. So ineffective assistance of counsel was not established. That leads to my last question for you, I think. Do our cases require that we credit affidavits submitted in opposition to the motion to reopen? No, I'm just saying that if you look at the purpose of matter of lazada, that is to give the counsel whose performance is being impugned an opportunity to respond, to then discredit that affidavit with no, nothing other than. But that's what happens in criminal cases all the time. The defendant says my lawyer was ineffective and I was prejudiced. And then the lawyer submits an affidavit. And then they both get on the witness stand and they testify. Sure. And that's why I'm saying in this case, look at the factual circumstances. To credit Mr. Balian's version over the former counsel's, you'd have to believe that they really did want to go forward and just have their son be sent back to Armenia. And I think that's the struggle the board had, was that that just doesn't make sense. That they were just, if it really is so bad and if it really is Mr. Balian's family is being targeted by the mob, the mafia, or the government, that they're just going to send their son unaccompanied back to Armenia where he could, he's already, if you believe him, there's already been an attempted kidnapping. There's extortion attempts. Mr. Balian was beaten and had reconstructive surgery. If you believe all that, you have to believe they were willing to send their son back there also, which just doesn't make sense. And I think that's the balancing the board did. And without. Maybe they didn't have a good relationship with their son. You know, parents and children and all that. Well, that certainly is not in the record. Thank you, counsel. Thank you. I'll give you a minute for rebuttal. We'll give you two minutes for rebuttal. Judge Friedman is overly kind. For the motion to reopen, you're correct. Under the case of Lensiko, for example, statements in the applicant's affidavit are supposed to be accepted as true unless inherently unbelievable. Well, is it inherently? I think what I caught at the end of your opponent's argument was a notion that it really is inherently unbelievable that they would have abandoned the son since the only way to keep the son out of this terrible situation was to get asylum. How do you respond to that? They wouldn't abandon because the son could apply for asylum. He was kidnapped, and I understand the government is trying to undermine the seriousness of that. But also the son could testify that because of the family he could be targeted, too. So it's not. Well, the judge denied asylum to the son in this case, did she not? That's right. And I don't read your brief as other than attacking the credibility determination with respect to the father making any argument that she made a mistake as to the son. Do I miss something? I'm sorry. Could you repeat the question? Your brief with respect to the merits of the removal proceeding basically says the judge made a mistake in making an adverse credibility determination as to the father. Correct? Well, regarding the whole case, it's — Right. But is there anything in there that's specifically devoted to the son's case in your brief? The son testified, and the judge didn't find the testimony not credible. The judge didn't make regarding the son's credibility specifically. So there was no reason to devote to the son. No, she didn't. But she made a separate finding that the son was removable, did she not? Or am I mistaken? Well, she made a finding regarding all respondents. Right. The entire family. Okay. So — but we argue that the judge made the wrong decision, meaning the son would be eligible for asylum. But the other point I was trying to make, I understand, but if I could just have 10 seconds. This is not a case where the former consul failed to give the right advice. This is a case where he gave the wrong advice. And it's not as if the two affidavits are equivalent. He stated in the letter, the lawyer, I told them they could apply for asylum even if the judge denied the asylum. And this completely lowers the lawyer's credibility. Thank you. I'm going to do something strange, because counsel at the government table was raising her hand when I asked the question. Well, could you do it at the podium, please? I just wanted to clarify, so I didn't — I hope for Mr. Belion's son's benefit, that he was a derivative on the asylum application. Right. So he had no application in his own name. There was no finding against him. But because he had no form of relief that he applied for in his own name, the denial of asylum affected him. But there was no specific ruling as to his credibility. That's what I've understood also. Thank you. Thank you. With that, I thank both counsel for their arguments and their briefs, and the case will be submitted.
judges: Friedman, Farris, Hurwitz